IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| SCOTT SCHWARTZ, individually and on behalf of all others similarly situated, | § § § | |
| *Plaintiff*, | § § | Civil Action No. 23-27-WCB |
| v. | § § | |
| LATCH, INC, et al., | § § | |
| *Defendants*. | § § § | |

## MEMORANDUM OPINION AND ORDER

Plaintiff Scott Schwartz brought this securities class action against defendant Latch, Inc., ("Latch") and several of Latch's officers and directors. Latch went public via a merger with a special purpose acquisition company in June 2021. Dkt. No. 1 at ¶ 1. On January 11, 2023, Mr. Schwartz filed his complaint in this district, alleging that Latch's pre-merger registration statement contained false and misleading statements that are actionable under sections 11 and 15 of the Securities Act, 15 U.S.C. §§ 77k, 77o. *Id.* ¶¶ 9, 12. Mr. Schwartz asserted that venue was proper in this district because Latch is a Delaware corporation and because Latch's Second Amended and Restated Certificate of Incorporation for Latch includes a forum selection clause requiring that actions against Latch, including actions under the Securities Act of 1933, be brought in Delaware. Dkt. No. 1 at ¶¶ 17, 101–103.

Shortly after summonses were served on the defendants, the parties stipulated to extend the defendants' deadline to respond to the complaint until after appointment of a lead plaintiff. Dkt. No. 8. On April 24, 2023, a lead plaintiff was appointed. Dkt. No. 13. Soon after, a Rule 16 scheduling conference was set for May 5, 2023. Dkt. No. 14. Before that conference took place,

however, the parties submitted a "Joint Stipulation and Scheduling Order" for the court's approval. Dkt. No. 15. On May 2, 2023, the court entered that order in the form proposed by the parties, and the scheduling conference was canceled. Dkt. No. 16; Dkt. No. 17.

As entered, the scheduling order explained that Latch intended "to file restated financial statements with the Securities and Exchange Commission ('SEC') on or before August 4, 2023" and that the plaintiff intended "to file an amended complaint that will supersede the Complaint after Latch files restated financial statements with the SEC." Dkt. 16 at 2. As a result, the order provided that, instead of responding to the complaint, Latch would file its restated financial statements, and Mr. Schwartz would then file an amended complaint based on the restated financial statements. After that, the order provided, the defendants would file their proposed motion to transfer venue. *Id.* at 3.

As it admits, Latch has not yet filed restated financial statements. Mr. Schwartz has therefore not filed an amended complaint. Nevertheless, on September 27, 2024, the defendants filed their motion to transfer. Dkt. No. 25. Mr. Schwartz opposes the motion as both premature under the scheduling order and unjustified on the merits. Dkt. No. 29.

## I. Violation of the Scheduling Order

As Mr. Schwartz explains, the defendants agreed to postpone moving to transfer this case until after Mr. Schwartz filed his amended complaint. Mr. Schwartz, however, has been unable to file his amended complaint because Latch has not yet filed its restated financial statements. The defendants' motion to transfer is therefore premature under the plain language of the scheduling order. The defendants respond that the stipulation and scheduling order that they jointly filed was not a "Rule 16(b) scheduling order" but rather a mere stipulation, which no longer applies because the circumstances have changed since the order was entered 18 months ago.

2

I am troubled by the defendants' disregard for the operative scheduling order.  After I scheduled a Rule 16 conference, the parties prepared a document that they titled "Joint Stipulation and [Proposed] Scheduling Order," which they then jointly filed.  Dkt. No. 15.  Based on that filing, I entered an order titled "Joint Stipulation and Scheduling Order," Dkt. No. 16, and I canceled the Rule 16 scheduling conference, Dkt. No. 17.  Even if my May 2, 2023, order lacks the "required contents" of a Rule 16 scheduling order such that the parties need not show good cause to modify the order as the defendants argue, the order is not only a pretrial court order but a pretrial court order that the defendants asked the court to enter.  That pretrial court order clearly directed that the defendants would not file their motion to transfer until after Mr. Schwartz filed an amended complaint.  Accordingly, when the defendants filed their motion early without court permission, they violated a court order.

Federal Rule of Civil Procedure 16(f)(1) permits a court to issue "any just orders" if a party "fails to obey a scheduling or other pretrial order."  Federal Rule of Civil Procedure 16(f)(2) instructs that "[i]nstead of or in addition to any other sanction, the court must order the party, its attorney, or both to pay the reasonable expenses—including attorney's fees—incurred because of any noncompliance with this rule, unless the noncompliance was substantially justified or other circumstances make an award of expenses unjust."  The Third Circuit has confirmed that, "[a]s the plain language of Rule 16(f) indicates, monetary sanctions for noncompliance with Rule 16 pretrial orders are required and appropriate absent a showing that the violation was 'substantially justified' or the award of expenses is 'unjust' under the circumstances of the case."  *Tracinda Corp. v. DaimlerChrysler AG*, 502 F.3d 212, 241 (3d Cir. 2007); *Rorrer v. Cleveland Steel Container*, 564 F. App'x 642, 644 (3d Cir. 2014) ("Absent a showing that the noncompliance was either 'substantially justified' or circumstantially 'unjust,' Rule 16(f) requires the imposition of monetary

3

sanctions."). The Third Circuit has explained that "[s]ubstantial justification exists where there is a 'genuine dispute concerning compliance.'" *Rorrer*, 564 F. App'x at 644. In view of the mandatory nature of Rule 16(f)(2), the defendants are instructed to file a letter brief of no more than three single-spaced pages within seven days of the date of this order explaining why their noncompliance with the stipulated pretrial order (i.e., the operative scheduling order) was substantially justified or why imposing monetary sanctions would be unjust. The plaintiff may respond to that letter brief with a letter brief of no more than three single-spaced pages filed within three days of the filing of the defendants' letter brief.

### II. The Merits of the Motion

Although I have found that the defendants' motion was filed in violation of the scheduling order, I will evaluate the motion now, in the interest of efficiency, rather than modify the scheduling order and require briefing to be resubmitted.

Under 28 U.S.C. § 1404(a), a district court may, for the convenience of parties and witnesses, "transfer any civil action to any other district or division where it might have been brought" if doing so would be "in the interest of justice." The Third Circuit has explained that "[t]he burden of establishing the need for transfer . . . rests with the movant" and that "the plaintiff's choice of venue should not be lightly disturbed." *Jumara v. State Farm Ins. Co.*, 55 F.3d 873, 879 (3d Cir. 1995).

In evaluating a motion to transfer, the court must first determine "whether the case could have been brought in the district to which the movant wishes to transfer." *Cisco Sys., Inc. v. Ramot at Tel Aviv Univ., Ltd.*, No. 21-1365, 2022 WL 16921988, at *3 (D. Del. Nov. 14, 2022) (citing *Jumara*, 55 F.3d at 878). If venue would have been proper in that district, the court must then evaluate whether the public and private interest factors set forth in *Jumara* favor transfer. *Id*. at

*3–4.  The defendant must show that "the balance of convenience of the parties is *strongly* in favor" of transfer to prevail on its motion.  *Paycom Software, Inc. v. Travelers Cas. & Sur. Co. of Am.*, No. 21-01403, 2022 WL 1063845, at *2 (D. Del. Apr. 8, 2022) (quoting *Shutte v. Armco Steel Corp.*, 431 F.2d 22, 25 (3d Cir. 1970) (emphasis in *Paycom*).

The defendants argue that they could have been sued in the United States District Court for the Southern District of New York because the relevant registration statement was issued in New York, where the pre-merger entities were located at the time of issuance.  They further argue that the district court in that district would have jurisdiction over the case because the causes of action arise under sections 11 and 15 of the Securities Act.  Mr. Schwartz does not contest that the case could have been filed in the Southern District of New York.  Given that concession, I move to addressing the private and public interest factors articulated by the Third Circuit in *Jumara*.

The first private interest factor is the plaintiff's choice of forum.  *Jumara*, 55 F.3d at 879.  Mr. Schwartz's choice to sue in the District of Delaware is a "paramount consideration" in the section 1404(a) analysis.  *NXP USA, Inc. v. IMPINJ, Inc.*, No. 19-1875, 2020 WL 5665257, at *2 (D. Del. Sept. 23, 2020) (quoting *Shutte*, 431 F.2d at 25).  Mr. Schwartz, however, is a resident of New York.  Dkt. No. 1-2 (Civil Cover Sheet).  Thus, "the deference to be given to [Mr. Schwartz's] choice of forum is reduced."  *Selene Commc'n Techs., LLC v. Trend Micro Inc.*, No. 14-435, 2015 WL 237142, at *1 (D. Del. Jan. 16, 2015); *see also Express Mobile, Inc. v. Web.com Grp., Inc.*, No. 19-1936, 2020 WL 3971776, at *2 (D. Del. July 14, 2020).  Accordingly, the plaintiff's choice of forum weighs against transfer, but not as strongly as it would if Delaware were Mr. Schwartz's home forum.  *See Deloitte Consulting LLP v. Sagitec Sols. LLC*, 692 F. Supp. 3d 421, 434–35 (D. Del. 2023).

The second private interest factor is the defendants' preferred forum. *Jumara*, 55 F.3d at 879. The defendants argue that they would prefer to litigate in the Southern District of New York. Although that fact would ordinarily weigh in favor of transfer, *e.g.*, *Mitel Networks Corp. v. Facebook, Inc.*, 943 F. Supp. 2d 463, 470 (D. Del. 2013), Latch made the decision to incorporate in Delaware. In so doing, Latch "chose to avail itself of the protections and benefits of Delaware law and, thereby, expose itself to litigation here." *Gielata v. Heckmann*, No. CIV.A. 10-378, 2010 WL 3940815, at *3 (D. Del. Oct. 6, 2010), *report and recommendation adopted sub nom. In re Heckmann Corp. Sec. Litig.*, 2011 WL 1219230 (D. Del. Mar. 31, 2011). Beyond that, Latch included a forum selection clause in its Second Amended and Restated Certificate of Incorporation that, by and large, requires Latch to be sued in a Delaware court. *See* Dkt. No. 1 ¶ 103. Accordingly, I find that the defendants have no ground to complain about Mr. Schwartz's choice of forum, because Latch chose to incorporate in Delaware and sought to require that any actions against it, such as this one, be brought in Delaware. *See Gielata*, 2010 WL 3940815, at *3. Thus, I give this factor minimal weight in favor of transfer.

The third private interest factor is where the claim arose. *Jumara*, 55 F.3d at 879. The defendants argue that all the challenged statements were prepared or made in New York, and Mr. Schwartz does not dispute that representation. This factor therefore weighs in favor of transfer.

The fourth private interest factor is the convenience of the parties. *Jumara*, 55 F.3d at 879. For this factor, I consider (1) the parties' physical location; (2) "the associated logistical and operational costs to the parties' employees in traveling to Delaware (as opposed to the proposed transferee district) for litigation purposes"; and (3) "the relative ability of each party to bear these costs in light of its size and financial wherewithal." *ANI Pharms., Inc. v. Method Pharms., LLC*, No. 17-1097, 2019 WL 176339, at *8 (D. Del. Jan. 11, 2019) (quoting *MEC Resources, LLC v.*

6

*Apple, Inc.*, 269 F. Supp. 3d 218, 225 (D. Del. 2017)). The defendants argue that the majority of the parties reside or work in New York, so New York will be a more convenient location for the litigation. They acknowledge, however, that Latch is incorporated in Delaware and is currently headquartered in Missouri. As other courts in this district have explained, "one aspect of a company's decision to incorporate in Delaware is that under our jurisdictional and venue statutes it is agreeing to submit itself to the jurisdiction of the courts in this state for the purposes of resolving this type of commercial dispute," so "absent some showing of a unique or unexpected burden, a company should not be successful in arguing that litigation in its state of incorporation is inconvenient." *ADE Corp. v. KLA-Tencor Corp.*, 138 F. Supp. 2d 565, 572–73 (D. Del. 2001); *see also Allen Med. Sys., Inc. v. Mizuho Orthopedic Sys., Inc.*, 2022 WL 1046258 (D. Del. Apr. 7, 2022); *Werner v. Hive Media Grp., LLC*, No. 20-1176, 2021 WL 3662902, at *3 (D. Del. Aug. 18, 2021); *Blackbird Tech LLC v. E.L.F. Beauty, Inc.*, No. 19-1150, 2020 WL 2113528, at *3 (D. Del. May 4, 2020); *Ivoclar Vivadent AG v. 3M Co.*, No. 11-1183, 2012 WL 2374657 at *11 n.10 (D. Del. June 22, 2012); *Intellectual Ventures I LLC v. Checkpoint Software Techs. Ltd.*, 797 F. Supp. 2d 472, 482 (D. Del. 2011); *Wesley-Jessen Corp. v Pilkington Visioncare, Inc.*, 157 F.R.D. 215, 218 (D. Del. 1993). Based on that rationale, I find that the burden on the individual defendants who reside in New York weighs somewhat in favor of transfer, but that the defendants "have failed to demonstrate that litigating in Delaware will pose any unique or unusual burden" to Latch. *See Intellectual Ventures*, 797 F. Supp. 2d at 482.

      The fifth private interest factor is the convenience of the witnesses and in particular whether any of the prospective witnesses would be unavailable for trial in one of the forums. *Jumara*, 55 F.3d at 879. The defendants argue that "other likely material witnesses" reside or work in New York, but they have not identified any specific witnesses who may be unavailable to testify at a

trial held in Delaware. *See* Dkt. No. 26 at 9. This factor is therefore neutral. *See Fink on behalf of Nation Safe Drivers Emp. Stock Ownership Plan v. Wilmington Tr., N.A.*, 473 F. Supp. 3d 366, 375 (D. Del. 2020) ("Neither party has argued that a necessary witness will refuse to appear or otherwise be unavailable for trial in either venue.").

The sixth private interest factor is the location of books and records, to the extent they could not readily be produced in the alternative forum. *Jumara*, 55 F.3d at 879. The defendants concede that the relevant "documentary evidence would be available in both districts." Dkt. No. 26 at 10 n.7. Thus, this factor is neutral. *See Deloitte*, 692 F. Supp. 3d at 437.

In view of Mr. Schwartz's preference to litigate this case in Delaware, *see* Dkt. No. 29 at 3–4, and Latch's decision to incorporate in Delaware and to include a forum selection clause in its Certificate of Incorporation, I find the private interest factors weigh against transfer.

Next, I consider the public interest factors. The first public interest factor is whether the judgment in this case would be unenforceable in one of the candidate forums. *Jumara*, 55 F.3d at 879–80. The defendants acknowledge that any judgment would be enforceable in either district. Dkt. No. 26 at 7 n.4. This factor is therefore neutral.

The second public interest factor is whether there are any practical considerations that could make the trial easy, expeditious, or inexpensive in one district as compared to the other. *Jumara*, 55 F.3d at 879–80. The defendants argue that related litigation is pending in the Southern District of New York, so transfer would facilitate judicial economy and efficiency. The defendants focus on one lawsuit in which violations of sections 10(b) and 20(a) of the Securities Exchange Act of 1934 were alleged ("the *Brennan* action") and two shareholder derivative actions filed by Latch's stockholders, both of which were filed after the action in this case.

The *Brennan* action, however, was recently settled before significant discovery was conducted and before substantive motions were ruled on. All that remains in that case is for the district court to determine whether to approve the settlement. And, as the defendants acknowledge, the derivative actions were stayed shortly after they were filed. Dkt. No. 26 at 5. Specifically, the court in the derivative actions directed that the actions be stayed until 21 days following the resolution of any motions to dismiss in this case and in the *Brennan* action. No. 23-1273, Dkt. No. 15 at 3 (S.D.N.Y. Apr. 15, 2023). Because the *Brennan* action has been settled without resolution of the motion to dismiss in that case, the stay of the derivative actions will continue until the resolution of any motion to dismiss in this case. Because the transferee court has not issued any substantive orders in the *Brennan* action, which awaits only the court's approval of the settlement, nor taken any action in the stayed derivative actions other than to enter the stay to which the parties agreed, this is not a case in which the district court in the transferee venue has great familiarity with the matter through involvement in related cases. For that reason, the interest in the efficient administration of related cases does not significantly favor transfer.

The third public interest factor is the degree of court congestion in the two forums. *Jumara*, 55 F.3d at 879–80. The defendants argue that this factor is neutral. Dkt. No. 26 at 7 n.4. This case, however, "has been assigned to a visiting judge with a smaller district court docket than the active judges in the District of Delaware," and thus I find this factor weighs slightly against transfer. *See Deloitte*, 692 F. Supp. 3d at 437.

The fourth public interest factor is the local interest in deciding local controversies at home. *Jumara*, 55 F.3d at 879–80. The defendants argue that New York has a stronger interest in this case than Delaware because Latch maintained its principal place of business in New York at the

9

time when the alleged harm occurred.[1] Mr. Schwartz argues that Delaware has a stronger interest in this case given that the case involves misrepresentations made by a Delaware corporation. Other courts in this district have found that Delaware "has an interest in litigation regarding companies incorporated within its jurisdiction." *E.g.*, *Kuck v. Veritas Software Corp.*, No. CIV. 04-831, 2005 WL 123744, at *3 (D. Del. Jan. 14, 2005); *Autodesk Canada Co. v. Assimilate, Inc.*, No. CIV. 08-587, 2009 WL 3151026, at *9 (D. Del. Sept. 29, 2009), *report and recommendation adopted*, 2010 WL 11712352 (D. Del. Feb. 12, 2010); *Mallinckrodt, Inc. v. E-Z-Em Inc.*, 670 F. Supp. 2d 349, 357 (D. Del. 2009). I agree with those courts and find that Delaware has an interest in the case that is at least equal to New York's.

The fifth public interest factor is the public policies of the candidate forums. *Jumara*, 55 F.3d at 879–80. The defendants take the position that this factor is neutral. Dkt. No. 26 at 7 n.4. But "[i]t is generally accepted that 'Delaware's public policy encourages Delaware corporations to resolve their disputes in Delaware courts.'" *Deloitte*, 692 F. Supp. 3d at 438 (citing *Williamsburg Furniture, Inc. v. Lippert Components, Inc.*, No. 19-1993, 2020 WL 331119, at *6 (D. Del. Jan. 21, 2020)). Because this case was brought in federal court rather than Delaware state court, I find this factor weighs against transfer, but only slightly so. *See id.*

The sixth public interest factor is the familiarity of the trial judge with the applicable state law. *Jumara*, 55 F.3d at 879–80. Because the cause of action in this case is federal, rather than being based on state law, the defendants take the position that this factor is neutral. Dkt. No. 26 at 7 n.4. I agree.

---

[1] Latch's headquarters are now located in Missouri.

In sum, I find the public interest factors as a whole weigh slightly against transfer. Because both the private interest factors and the public interest factors weigh against transfer, I will deny the defendants' motion.

* * *

I note that the defendants have represented that "Latch has yet to restate its financials and it is unclear when it will do so, given the expansive scope and complexity of the restatement process." Dkt. No. 30 at 6. Thus, Mr. Schwartz is instructed to inform the court within 21 business days of this order as to whether he wants to wait for Latch to restate its financials and subsequently file an amended complaint as contemplated by the current scheduling order or whether he would like to forgo filing an amended complaint and prosecute this litigation under the current complaint.

IT IS SO ORDERED.

SIGNED this 13th day of November, 2024.

_____
WILLIAM C. BRYSON
UNITED STATES CIRCUIT JUDGE