**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| SCOTT SCHWARTZ, Individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>vs.<br><br>LATCH, INC., LUKE SCHOENFELDER, ROBERT J. SPEYER, PAUL A. GALIANO, JENNY WONG, JOSHUA KAZAM, JENNIFER RUBIO, NED SEGAL, MICHELANGELO VOLPI, PETER CAMPBELL, TRICIA HAN, RAJU RISHI, J. ALLEN SMITH, and ANDREW SUGRUE,<br><br>Defendants. | Civil Action No. 1:23-cv-00027-WCB<br><br>CLASS ACTION |

**STIPULATION AND AGREEMENT OF SETTLEMENT**

This Stipulation and Agreement of Settlement dated June 11, 2025 ("Stipulation") is entered into between court-appointed Lead Plaintiff Scott Schwartz ("Lead Plaintiff"), on behalf of himself and the Settlement Class (as defined in ¶ 1(tt) below),[1] and Defendants Latch, Inc. ("Latch" or the "Company"); and Luke Schoenfelder, Robert J. Speyer, Paul A. Galiano, Jenny Wong, Joshua Kazam, Jennifer Rubio, Ned Segal, Michaelangelo Volpi, Peter Campbell, Tricia Han, Raju Rishi, J. Allen Smith, and Andrew Sugrue ("Individual Defendants" and, together with Latch, "Defendants" and, together with Lead Plaintiff, the "Parties"), by and through their respective counsel, and is intended by the Parties to fully, finally, and forever resolve, release, discharge, and settle the Released Claims (defined in ¶ 1(ll) below) against the Released Parties

[1] All terms with initial capitalization not otherwise defined herein shall have the meanings ascribed to them in ¶ 1 herein.

(defined in ¶ 1(nn) below), subject to the approval of the United States District Court for the District of Delaware.

WHEREAS:

A. On January 11, 2023, Scott Schwartz filed the Action (as defined below in ¶ 1(a)) in the U.S. District Court for the District of Delaware against Defendants, alleging violations of Section 11 of the Securities Act of 1933 (the "Securities Act") by all Defendants, and violations of Section 15 of the Securities Act by all Individual Defendants. Dkt. 1.

B. On or about April 24, 2023, United States District Judge William C. Bryson appointed Scott Schwartz to serve as Lead Plaintiff and Fishman Haygood LLP to serve as "Lead Counsel" and deLeeuw Law LLC to serve as "Liaison Counsel." Dkt. 13.

C. The Court set a Rule 16 scheduling conference for May 5, 2023. Dkt. 14. On May 2, 2023, the Parties submitted a Joint Stipulation and Scheduling Order for the Court's approval (the "Scheduling Order"). Dkt. 15. On the same date, the Court entered the Scheduling Order in the form proposed by the parties and canceled the Rule 16 conference. Dkt. 16.

D. The Scheduling Order explained that Latch intended to file restated financial statements with the Securities and Exchange Commission ("SEC") on or before August 4, 2023 and that Lead Plaintiff intended to file an amended complaint after Latch restated its financial statements with the SEC. The Scheduling Order also contemplated that Defendants would file a motion to transfer venue to the United States District Court for the Southern District of New York.

E. On January 8, 2024, following the exchange of mediation statements, counsel for the Parties participated in a voluntary mediation before David M. Murphy of Phillips ADR, an experienced mediator. A settlement was not reached at that time.

F. On June 28, 2024, the Parties again participated in a further voluntary mediation before Mr. Murphy. The mediation again concluded without a settlement, but with Mr. Murphy's assistance, the Parties continued their arm's length settlement negotiations.

G. On September 27, 2024, Defendants filed a motion to transfer the Action to the United States District Court for the Southern District of New York (the "Motion to Transfer"), where certain other matters pertaining to Latch were pending. Dkt. 25. On October 11, 2024, Lead Plaintiff opposed the Motion to Transfer. Dkt. 29. On October 18, 2024, Defendants filed a reply brief in support of the Motion to Transfer. Dkt. 30.

H. On November 13, 2024, the Court denied the Motion to Transfer.

I. The Parties continued their arm's length settlement negotiations and, on December 14, 2024, reached an agreement to settle in principle after receiving and accepting a mediator's proposal on the Settlement Amount, the definitive terms of which are reflected in this Stipulation.

J. On December 26, 2024, the Parties notified the Court of their agreement-in-principle to settle and jointly requested that the Court stay all pending deadlines until the Parties filed a stipulation of settlement, which the parties anticipated filing on or before February 14, 2025. Dkt. 36.

K. On December 30, 2024, the Court ordered a stay of all pending deadlines to allow the Parties to file this Stipulation and directed the Parties to submit a status report to the Court if a stipulation of settlement was not filed by February 14, 2025. Dkt. 37.

L. On February 14, 2025, the Parties provided a status update to the Court and indicated they anticipated filing the Stipulation by March 14, 2025. Dkt. 38. On March 14, 2025, April 14, 2025, May 14, 2025, and May 28, 2025, the Parties provided further status updates to the Court regarding the negotiations of this. Dkts. 40-42. In the May 28, 2025 letter, the Parties

notified the Court they were close to finalizing this Stipulation and anticipated filing by June 11, 2025. Dkt. 42.

M. This Stipulation (together with the exhibits attached hereto) reflects, subject to Court approval, the final and binding agreement between the Parties to resolve the Action.

N. In connection with this Action, Lead Plaintiff, through Lead Counsel, conducted a thorough investigation relating to the claims, defenses, and underlying events and transactions that are the subject of the Action. This process included, *inter alia*, reviewing and analyzing: (i) documents filed publicly by the Company with the SEC; (ii) publicly available information, including press releases, news articles, interviews, and other public statements issued by or concerning the Company; (iii) research reports issued by financial analysts concerning the Company; (iv) interviews conducted with former employees of the Company; and (v) the applicable law governing the claims and potential defenses.

O. Based upon their investigation, prosecution, and mediation of the case, Lead Plaintiff and Lead Counsel have concluded that the terms and conditions of this Stipulation are fair, reasonable, and adequate to Lead Plaintiff and the Settlement Class, and in their best interests. Based on Lead Plaintiff's direct oversight of the prosecution of this matter and with the advice of his counsel, Lead Plaintiff has agreed to settle and release the Released Plaintiff Claims (as defined below in ¶ 1(oo) as against Defendants and the other Defendant Releasees pursuant to the terms and provisions of this Stipulation, after considering, among other things: (i) the financial benefit that the Settlement Class will receive under the proposed Settlement; and (ii) the significant risks and costs of continued litigation and trial.

P. Lead Plaintiff believes that the claims asserted in the Action have merit and that the information developed to date supports the claims asserted. However, Lead Plaintiff and Lead

Counsel recognize and acknowledge the risk, burden, and expense of further proceedings. Based on their evaluation of all relevant factors, Lead Plaintiff and Lead Counsel believe that the Settlement set forth in this Stipulation confers substantial monetary benefits upon, and is in the best interests of, the Settlement Class.

Q. As set forth below, Defendants deny, and continue to deny, each and every allegation of wrongdoing, fault, liability, or damage against them arising out of any of the conduct, statements, acts, or omissions alleged, or that could have been alleged, by Lead Plaintiff and the Settlement Class. Defendants have asserted and continue to assert that, at all times, they acted in good faith and in a manner reasonably believed to be in accordance with all applicable rules, regulations, and laws. Defendants maintain that they have meritorious defenses to all claims alleged in the Action and continue to believe the claims asserted against them in the Action are without merit and that the Action itself should not be certified as a class action for purposes of trial and adjudication of liability and damages. By entering into this Stipulation, Defendants neither concede nor admit any wrongdoing or liability whatsoever.

R. Defendants have agreed to enter into this Stipulation solely to eliminate the uncertainties, burden, and expense of further litigation and to put the Released Claims to rest finally and forever. Nothing in this Stipulation shall be construed as or deemed evidence supporting an admission by either Defendants or any other Defendant Releasees with respect to any of Lead Plaintiff's allegations or claims, or of any wrongdoing, fault, liability, or damages whatsoever.

NOW THEREFORE, it is hereby STIPULATED AND AGREED, by and among Lead Plaintiff (individually and on behalf of all members of the Settlement Class) and Defendants, by and through their respective undersigned attorneys and subject to the approval of the Court

pursuant to Rule 23(e) of the Federal Rules of Civil Procedure, that, in consideration of the benefits flowing to the Parties from the Settlement, all Released Plaintiff Claims as against the Defendant Releasees and all Released Defendant Claims as against the Plaintiff Releasees shall be finally and fully settled and released, and the Action shall be dismissed fully, finally and with prejudice, upon and subject to the terms and conditions set forth below.

## DEFINITIONS

1. As used in this Stipulation and any exhibits attached hereto and made a part hereof, the following capitalized terms shall have the following meanings:

(a) "Action" means *Schwartz v. Latch, Inc., et al*, Case No. 1:23-cv-00027-WCB (D. Del.).

(b) "Alternative Judgment" means a form of final judgment that may be entered by the Court herein but in a form different from the form of Judgment provided for in this Stipulation.

(c) "Authorized Claimant" means a Claimant who or that submits a valid Claim Form to the Claims Administrator that is approved for payment from the Net Settlement Fund.

(d) "Claim" means a paper claim on a Proof of Claim and Release Form or an electronic claim that is submitted to the Claims Administrator.

(e) "Claim Form" or "Proof of Claim and Release Form" means the form, substantially in the form attached hereto as Exhibit 5, that a Claimant must complete and submit to the Claims Administrator in order to be eligible to share in a distribution from the Net Settlement Fund.

(f) "Claimant" means a person or entity who or which submits a Claim Form to the Claims Administrator seeking to be eligible to share in the Net Settlement Fund.

(g) "Claims Administrator" means RG/2 Claims Administration LLC, the firm retained by Lead Counsel, subject to approval of the Court, to provide all notices approved by the Court to potential Settlement Class Members in the Action and to administer the Settlement.

(h) "Class Distribution Order" means an order to be entered by the Court authorizing and directing that the Net Settlement Fund be distributed, in whole or in part, to Authorized Claimants.

(i) "Complaint" means the Class Action Complaint filed in the Action on January 11, 2023, Dkt. 1.

(j) "Court" means the United States District Court for the District of Delaware.

(k) "Defendant Releasees" means: (i) Latch and any and all of Latch's present and former officers, directors, employees, parents, subsidiaries, affiliates, and divisions; (ii) the Individual Defendants; (iii) Tishman Speyer Properties, Inc., Tishman Speyer Properties, L.P., and TS Innovation Acquisitions Sponsor, L.L.C.; and (iv) for the persons or entities listed in (i), (ii), or (iii) of this ¶ 1(k), any of their respective Immediate Family members, heirs, trusts, trustees, executors, estates, administrators, beneficiaries, agents, insurers and reinsurers, predecessors, predecessors-in-interest, successors, successors-in-interest, assigns, attorneys, advisors, associates, employees, partners, partnerships, joint ventures, officers, directors, representatives, foundations, affiliates, or entity under their control.

(l) "Defendants" means Latch, Inc. and Luke Schoenfelder, Robert J. Speyer, Paul A. Galiano, Jenny Wong, Joshua Kazam, Jennifer Rubio, Ned Segal, Michaelangelo Volpi, Peter Campbell, Tricia Han, Raju Rishi, J. Allen Smith, and Andrew Sugrue.

(m) "Defendants' Counsel" means the law firms of Latham & Watkins LLP and Richards Layton & Finger, PA.

(n) "Effective Date" with respect to the Settlement means the first date by which all of the events and conditions specified in ¶ 41 of this Stipulation have been met and have occurred or have been waived.

(o) "Escrow Account" means an account maintained at Citibank, N.A. wherein the Settlement Amount shall be deposited and held in escrow under the control of Lead Counsel, subject to not only this Stipulation, but also the Judgment or, if applicable, Alternative Judgment.

(p) "Escrow Agent" means Citibank, N.A.

(q) "Escrow Agreement" means the agreement between Lead Counsel and the Escrow Agent setting forth the terms under which the Escrow Agent shall maintain the Escrow Account.

(r) "Final," with respect to the Judgment or, if applicable, the Alternative Judgment, or any other Court order means: (i) if no appeal is filed, the expiration date of the time provided for filing or noticing any appeal under the Federal Rules of Appellate Procedure, *i.e.*, thirty (30) calendar days after entry of the Judgment or order; or (ii) if there is an appeal from the Judgment or order, (a) the date of final dismissal of all such appeals, or the final dismissal of any proceeding on certiorari or otherwise, or (b) the date the Judgment or order is finally affirmed on an appeal, the expiration of the time to file a petition for a writ of certiorari or other form of review, or the denial of a writ of certiorari or other form of review, and, if certiorari or other form of review is granted, the date of final affirmance following review pursuant to that grant. However, any appeal or proceeding seeking subsequent judicial review pertaining solely to an order issued with respect to: (i) attorneys' fees, costs or expenses; or (ii) the Plan of Allocation for the Net Settlement Fund (as submitted or subsequently modified), shall not in any way delay or preclude the Judgment or, if applicable, the Alternative Judgment, from becoming Final.

(s) "Immediate Family" means children, stepchildren, grandchildren, parents, stepparents, grandparents, spouses, siblings, mothers-in-law, fathers-in-law, sons-in-law, daughters-in-law, brothers-in-law, and sisters-in-law. As used in this definition, "spouse" shall mean a husband, a wife, or a partner in a state that recognizes domestic relationship or civil union.

(t) "Individual Defendants" means Luke Schoenfelder, Robert J. Speyer, Paul A. Galiano, Jenny Wong, Joshua Kazam, Jennifer Rubio, Ned Segal, Michaelangelo Volpi, Peter Campbell, Tricia Han, Raju Rishi, J. Allen Smith, and Andrew Sugrue.

(u) "Judgment" means the final judgment, substantially in the form attached hereto as Exhibit 6, to be entered by the Court approving the Settlement.

(v) "Latch" or "Company" means Latch, Inc., the public entity existing following the June 4, 2021 merger.

(w) "Lead Counsel" means the law firm of Fishman Haygood LLP.

(x) "Lead Plaintiff" means Scott Schwartz.

(y) "Legacy Latch" means the private entity of Latch, Inc. existing prior to the June 4, 2021 merger.

(z) "Liaison Counsel" means deLeeuw Law LLC.

(aa) "Litigation Expenses" means the costs and expenses incurred by Plaintiff's Counsel in connection with commencing, prosecuting and settling the Action (which may include the costs and expenses of Lead Plaintiff directly related to his representation of the Settlement Class), for which Lead Counsel intends to apply to the Court for reimbursement from the Settlement Fund.

(bb) "Mediator" means David M. Murphy, Esq. of Phillips ADR.

(cc) "Net Settlement Fund" means the Settlement Fund less: (i) any Taxes and Tax Expenses; (ii) any Notice and Administration Costs; (iii) any attorneys' fees and Litigation Expenses awarded by the Court; (iv) any award to Lead Plaintiff authorized by the Court; and (v) any other fees and expenses awarded by the Court.

(dd) "Notice" means the Notice of Pendency of Class Action, Proposed Class Action Settlement, and Motion for Attorneys' Fees and Expenses, substantially in the form attached hereto as Exhibit 2, which is to be posted on the Settlement Website and mailed or e-mailed to Settlement Class Members upon request.

(ee) "Notice and Administration Costs" means all costs, fees, and expenses that are incurred by the Claims Administrator and/or Lead Counsel in connection with providing notice to the Settlement Class and administering the Settlement, including but not limited to: (i) disseminating the Notice to the Settlement Class; (ii) receiving and reviewing Claims; (iii) applying the Plan of Allocation; (iv) communicating with Persons regarding the proposed Settlement and claims administration process; (v) distributing the proceeds of the Settlement; and (vi) establishing and maintaining the Escrow Account.

(ff) "Parties" means Defendants and Lead Plaintiff, on behalf of himself and the Settlement Class.

(gg) "Plaintiff Releasees" means Lead Plaintiff, Plaintiff's Counsel, and all other Settlement Class Members, and their respective current and former officers, directors, agents, parents, affiliates, subsidiaries, successors, predecessors, assigns, assignees, employees, and attorneys, in their capacities as such.

(hh) "Plaintiff's Counsel" means Lead Counsel, Liaison Counsel, and Bragar Eagel & Squire, P.C.

(ii) "Plan of Allocation" means the proposed plan set forth in the Notice to be utilized for determining the allocation of the Net Settlement Fund to eligible Settlement Class Members, as submitted or subsequently modified.

(jj) "Postcard Notice" means the postcard form notice, substantially in the form attached hereto as Exhibit 4, which is to be mailed to Settlement Class Members and third-party nominees that can be identified through reasonable investigation.

(kk) "Preliminary Approval Order" means the order, substantially in the form attached hereto as Exhibit 1, to be entered by the Court preliminarily approving the Settlement and directing that notice of the Settlement be provided to the Settlement Class.

(ll) "Released Claims" means each and all of the Released Defendant Claims and Released Plaintiff Claims.

(mm) "Released Defendant Claims" means any and all manner of actions, suits, claims, demands, rights, liabilities, damages, costs, duties, controversies, obligations, debts, sums of money, contracts, agreements, promises, losses, judgments, allegations, arguments, causes of action, restitution, rescission, interest, attorneys' fees, expert or consulting fees, expenses, matters, and issues , whether known or unknown (including, for the avoidance of doubt, Unknown Claims), asserted or unasserted, contingent or absolute, suspected or unsuspected, disclosed or undisclosed, liquidated or unliquidated, matured or unmatured, accrued or unaccrued, class or individual in nature, apparent or unapparent, whether concealed or hidden and causes of action of every nature and description, whether based on federal, state, local, foreign, statutory, administrative, or common law or any other law, rule or regulation, at law or in equity, whether held directly, representatively or derivatively, that have been or could have been asserted against any of the Plaintiff Releasees in any court or forum based upon any allegations that arise out of or relate in

any way to the institution, prosecution, or settlement of the claims against Defendants. For the avoidance of doubt, "Released Defendant Claims" do not include any claims relating to the enforcement of the Settlement.

(nn) "Released Parties" means each and all of the Defendant Releasees and Plaintiff Releasees.

(oo) "Released Plaintiff Claims" means any and all manner of actions, suits, claims, demands, rights, liabilities, damages, costs, duties, controversies, obligations, debts, sums of money, contracts, agreements, promises, losses, judgments, allegations, arguments, causes of action, restitution, rescission, interest, attorneys' fees, expert or consulting fees, expenses, matters, and issues, whether known or unknown (including, for the avoidance of doubt, Unknown Claims), asserted or unasserted, contingent or absolute, suspected or unsuspected, disclosed or undisclosed, liquidated or unliquidated, matured or unmatured, accrued or unaccrued, direct or indirect, whether class or individual in nature, apparent or unapparent, whether concealed or hidden and causes of action of every nature and description, whether based on federal, state, local, foreign, statutory, administrative, or common law or any other law, rule or regulation, at law or in equity, whether held directly, indirectly, or representatively, that belong to any Settlement Class Member, that were or could have been asserted in the Action, and concern, arise out of, relate to, are based upon, or are related in any manner to the allegations, facts, matters, events, transactions, acts, occurrences, statements, representations, misrepresentations, and/or omissions alleged in the Action. For the avoidance of doubt, "Released Plaintiff Claims" do not include: (a) any claims relating to the enforcement of the Settlement; (b) the claims asserted in (i) *Brennan v. Latch, Inc.*, Case No. 1:22-cv-07473 (S.D.N.Y); (ii) *In re TS Innovation Acquisitions Sponsor, L.L.C., Stockholder Litigation*, C.A. No. 2023-0509 (Del. Ch.); and (iii) *In re Latch Inc. Derivative*

*Litigation*, Case No. 1:23-01273 (S.D.N.Y); or (c) the claims of any person or entity who timely and validly submits a request for exclusion in connection with this Settlement. For the further avoidance of doubt, "Released Plaintiff Claims" do not release claims in other actions simply because a member of a putative class in another action is also a member of the Settlement Class in this Action.

(pp) "Releasee(s)" means each and any of the Defendant Releasees and each and any of the Plaintiff Releasees.

(qq) "Releases" means the releases set forth in ¶¶ 5-7 of this Stipulation.

(rr) "Settlement" means the settlement between Lead Plaintiff and Defendants on the terms and conditions set forth in this Stipulation.

(ss) "Settlement Amount" means One Million Nine-Hundred-Fifty Thousand U.S. Dollars ($1,950,000) in cash to be paid pursuant to ¶ 11 of this Stipulation.

(tt) "Settlement Class" means all stockholders of Legacy Latch who purchased or otherwise acquired Latch common stock pursuant to Latch's registration statement filed in connection with its June 4, 2021 merger and were allegedly damaged thereby, excluding (i) Defendants; (ii) the officers and directors of Latch; (iii) members of the officers' and directors' immediate families and their legal representatives, heirs, successors, or assigns; (iv) any entity in which Defendants have or had a controlling interest; and (v) Settlement Class Members who validly and timely request exclusion in accordance with the requirements set by the Court in the Preliminary Approval Order and the notice given pursuant thereto.

(uu) "Settlement Class Member" means each person and entity who or that is a member of the Settlement Class.

(vv) "Settlement Hearing" means the hearing set by the Court under Rule 23(e)(2) of the Federal Rules of Civil Procedure to consider final approval of the Settlement.

(ww) "Settlement Fund" means the Settlement Amount plus any accrued interest thereon while in escrow.

(xx) "Settlement Website" means the website created specifically for the Settlement on which the Notice and Claim Form, as well as other information related to the Action and the Settlement, will be posted.

(yy) "Stipulation" means this Stipulation and Agreement of Settlement.

(zz) "Summary Notice" means the Summary Notice of Pendency of Class Action, Proposed Settlement, and Motion for Attorneys' Fees and Expenses, substantially in the form attached hereto as Exhibit 3, to be published as set forth in the Preliminary Approval Order.

(aaa) "Supplemental Agreement" means the Confidential Supplemental Agreement Regarding Requests for Exclusion executed simultaneously with this Stipulation, as described in ¶ 45 below.

(bbb) "Taxes" means: (i) all federal, state, and/or local taxes of any kind (including any estimated taxes, interest or penalties thereon) arising with respect to any income earned by the Settlement Fund, including any taxes or tax detriments that may be imposed upon the Releasees or their counsel with respect to any income earned by the Settlement Fund for any period after the deposit of the Settlement Amount in the Escrow Account during which the Settlement Fund does not qualify as a "qualified settlement fund" for federal or state income tax purposes; and (ii) all taxes imposed on payments by the Settlement Fund, including withholding taxes.

(ccc) "Tax Expenses" means the expenses and costs incurred by Lead Counsel in connection with determining the amount of, and paying, any taxes owed by the Settlement Fund (including, without limitation, expenses of tax attorneys and/or accountants and mailing and distribution costs and expenses relating to filing (or failing to file) tax returns for the Settlement Fund).

(ddd) "Termination Threshold" has the meaning ascribed to it in the Supplemental Agreement.

(eee) "Unknown Claims" means any Released Plaintiff Claims that Lead Plaintiff or any other Settlement Class Member does not know or suspect to exist in his, her, or its favor at the time of the release of such claims, and any Released Defendant Claims that any Defendant does not know or suspect to exist in his, her, or its favor at the time of the release of such claims, which, if known by him, her, or it, might have affected his, her or its decision(s) with respect to this Settlement, including, but not limited to, whether or not to object to the Settlement or to the release of the Released Claims. The definition of "Unknown Claims" expressly incorporates the claims set forth in California Civil Code § 1542, which the Parties have released pursuant to ¶ 7 below, which provides:

> **A general release does not extend to claims that the creditor or releasing party does not know or suspect to exist in his or her favor at the time of executing the release, which if known by him or her would have materially affected his or her settlement with the debtor or released party.**

The Released Parties may hereafter discover facts, legal theories, or authorities in addition to or different from those which they now know or believe to be true with respect to the subject matter of the Released Claims, but Lead Plaintiff and Defendants shall expressly, fully, finally, and forever settle and release, and each other Released Party shall be deemed to have settled and released, and upon the Effective Date and by operation of the Judgment shall have settled and

released, fully, finally, and forever, any and all Released Claims, without regard to the subsequent discovery or existence of such different or additional facts, legal theories, or authorities. The Parties expressly acknowledge, and each Released Party by operation of law shall be deemed to have acknowledged, that the inclusion of "Unknown Claims" in the definition of Released Claims was separately bargained for and a material element of the Settlement.

**PRELIMINARY APPROVAL OF SETTLEMENT**

2. Within ten (10) days of the execution of this Stipulation, Lead Plaintiff will use best efforts to share a draft of his unopposed motion for preliminary approval of the Settlement with Defendants. Within twenty (20) days of the execution of this Stipulation, the Parties will use best efforts to finalize the motion to allow Lead Plaintiff to move for preliminary approval of the Settlement and the scheduling of a hearing for consideration of, *inter alia*, final approval of the Settlement, the Plan of Allocation and Lead Counsel's application for an award of attorneys' fees and reimbursement of Litigation Expenses. Lead Plaintiff's motion for preliminary approval shall be unopposed by Defendants. Concurrently with the motion for preliminary approval, Lead Plaintiff shall apply to the Court for, and Defendants shall agree to, entry of the Preliminary Approval Order, substantially in the form attached hereto as Exhibit 1.

**CLASS CERTIFICATION**

3. Solely for the purpose of the Settlement, the Parties hereby stipulate and agree to: (a) certification of the Action as a class action, pursuant to Rules 23(a) and (b)(3) of the Federal Rules of Civil Procedure, consistent with the definition of the Settlement Class; (b) appointment of Lead Plaintiff as representative for the Settlement Class; and (c) appointment of Lead Counsel as Class Counsel pursuant to Rule 23(g) of the Federal Rules of Civil Procedure. Lead Plaintiff will move for entry of the Preliminary Approval Order, which will provisionally certify the Action to proceed as a class action for settlement purposes only. Lead Plaintiff will move for final

certification of the Settlement Class for settlement purposes only in connection with its motion for final approval of the Settlement. Defendants expressly reserve the right to contest class certification in the event that the Effective Date does not occur.

**RELEASE OF CLAIMS**

4. The obligations incurred pursuant to this Stipulation are in consideration of: (i) the full and final disposition of the Action as against Defendants; and (ii) the Releases provided for herein.

5. Pursuant to the Judgment, or the Alternative Judgment, if applicable, without further action by anyone, upon the Effective Date of the Settlement, Lead Plaintiff and each of the other Settlement Class Members, on behalf of themselves, and their respective heirs, executors, administrators, predecessors, successors, and assigns in their capacities as such, shall be deemed to have, and by operation of law and of the Judgment shall have (i) fully, finally, and forever compromised, settled, released, resolved, relinquished, waived, and discharged each and every Released Plaintiff Claim (including Unknown Claims) against the Defendant Releasees, (ii) covenanted not to sue any Defendants or other Defendant Releasees with respect to all such Released Plaintiff Claims, and (iii) been permanently barred and enjoined from asserting, commencing, prosecuting, instituting, assisting, or in any way participating in the commencement or prosecution of any or all of the Released Plaintiff Claims against any of the Defendant Releasees. It is an important element to Defendants' participation in this Settlement that the Defendant Releasees obtain the fullest possible release from liability to Lead Plaintiff or any Settlement Class Member relating to the Released Plaintiff Claims, and it is the intention of the Parties that any liability of the Defendant Releasees relating to the Released Plaintiff Claims be eliminated.

6. Pursuant to the Judgment, or the Alternative Judgment, if applicable, without further action by anyone, upon the Effective Date of the Settlement, Defendants, on behalf of themselves, and their respective heirs, executors, administrators, predecessors, successors, and assigns in their capacities as such, shall be deemed to have, and by operation of law and of the Judgment shall have, fully, finally, and forever compromised, settled, released, resolved, relinquished, waived, and discharged each and every Released Defendant Claim (including Unknown Claims) against the Plaintiff Releasees, and shall forever be barred and enjoined from prosecuting any or all of the Released Defendant Claims against any of the Plaintiff Releasees.

7. With respect to any and all Released Claims, the Parties stipulate and agree that, upon the Effective Date of the Settlement, Lead Plaintiff and Defendants shall expressly waive, and each of the Settlement Class Members shall be deemed to have, and by operation of the Judgment or the Alternative Judgment, if applicable, shall have, expressly waived, the provisions, rights, and benefits conferred by any law of any state or territory of the United States, or principle of common law or foreign law, which is similar, comparable, or equivalent to California Civil Code §1542.

8. Notwithstanding ¶¶ 5-7 above, nothing in the Judgment, or the Alternative Judgment, if applicable, shall bar any action by any of the Parties to enforce or effectuate the terms of this Stipulation or the Judgment, or Alternative Judgment, if applicable.

**THE SETTLEMENT CONSIDERATION**

9. Defendants deny, and continue to deny, each and every allegation of wrongdoing, fault, liability, or damage against them arising out of any of the conduct, statements, acts, or omissions alleged, or that could have been alleged, by Lead Plaintiff and the Settlement Class. Defendants maintain that they have meritorious defenses to all claims alleged in the Action and continue to believe the claims asserted against them in the Action are without merit and that the

Action itself should not be certified as a class action for purposes of trial and adjudication of liability and damages.

10. As set forth below, neither the Settlement nor any of the terms of this Stipulation shall constitute an admission or finding of any fault, liability, wrongdoing, or damages whatsoever or any infirmity in the defenses that Defendants have, or could have, asserted. Defendants have agreed to enter into this Stipulation solely to eliminate the uncertainties, burden, and expense of further litigation and to put the Released Claims to rest finally and forever. Similarly, this Stipulation shall in no event be construed or deemed to be evidence of or an admission or concession on the part of Lead Plaintiff of any infirmity in any of the claims asserted in the Action, or an admission or concession that any of Defendants' defenses to liability had any merit. Each of the Parties recognizes and acknowledges, however, that the Action has been initiated, filed, and prosecuted by Lead Plaintiff in good faith and defended by Defendants in good faith, and that the Action is being voluntarily settled with the advice of counsel.

11. In consideration of the full and final release, settlement, and discharge of all the Released Claims against the Defendant Releasees, Latch or its insurer(s) shall pay or cause to be paid the Settlement Amount into the Escrow Account within thirty (30) business days after the later of: (a) the date of entry by the Court of the Preliminary Approval Order, and (b) Defendants' receipt from Lead Plaintiff of the information necessary to effectuate a transfer of funds to the Escrow Account, including the bank name and ABA routing number, account number, and a signed Form W-9 reflecting the taxpayer identification number for the Settlement Fund.

12. Under no circumstances will Defendants or any of the other Defendant Releasees be required to pay, or cause payment of, more than the Settlement Amount pursuant to this Stipulation for any reason whatsoever, including, without limitation, as compensation to any

Settlement Class Member, as payment of attorneys' fees and expenses awarded by the Court, in payment of any fees or expenses incurred by any Settlement Class Member or Lead Counsel, as Notice and Administrative Costs, or as interest on the Settlement Amount of any kind and relating to any time period (including prior to the payment of the Settlement Amount into the Escrow Account).

13. Lead Plaintiff acknowledges that payment of the Settlement Amount in accordance with ¶ 11 will be made by the Company or its insurer(s), exclusively, and that the Individual Defendants will not be funding the Settlement Amount in any amount. For the avoidance of doubt, none of the Individual Defendants will bear any personal responsibility for any payment in connection with this Stipulation or the Settlement.

**USE OF SETTLEMENT FUND**

14. The Settlement Fund shall be used to pay: (a) any Taxes and Tax Expenses; (b) any Notice and Administration Costs; (c) any attorneys' fees and Litigation Expenses awarded by the Court; (d) any awards to Lead Plaintiff authorized by the Court; and (e) any other fees and expenses awarded by the Court. The balance remaining in the Settlement Fund (*i.e.*, the Net Settlement Fund) shall be distributed to Authorized Claimants as provided in ¶¶ 26-39 below.

15. Except as provided herein or pursuant to orders of the Court, the Net Settlement Fund shall remain in the Escrow Account prior to the Effective Date. All funds held by the Escrow Agent shall be deemed to be in the custody of the Court and shall remain subject to the jurisdiction of the Court until such time as the funds shall be distributed or returned pursuant to the terms of this Stipulation and/or further order of the Court. At the written direction of Lead Counsel, the Escrow Agent shall invest any funds in an interest bearing deposit account of Citibank, N.A., insured by the Federal Deposit Insurance Corporation ("FDIC") to the applicable limits.

16. The Escrow Agent shall not disburse the Settlement Fund except as provided in this Stipulation. The Parties agree that the Settlement Fund is intended to be a Qualified Settlement Fund within the meaning of Treasury Regulation § 1.468B-1. All provisions of this Stipulation shall be interpreted in a manner that is consistent with the Settlement Amount being a "qualified settlement fund" within the meaning Treasury Regulation § 1.468B-1. In addition, Lead Counsel or the Escrow Agent shall timely make, or cause to be made, such elections as necessary or advisable to carry out the provisions of this paragraph 16, including the "relation back election," as described in Treasury Regulation § 1.468B-1(j), to cause the Qualified Settlement Fund to come into existence at the earliest allowable date, and shall take or cause to be taken all actions as may be necessary or appropriate in connection therewith. Such election shall be made in compliance with the procedures and requirements contained in such regulations. It shall be the responsibility of Lead Counsel or the Escrow Agent to timely and properly prepare and deliver, or cause to be prepared and delivered, the necessary documentation for signature of all necessary parties and thereafter take all such actions as may be necessary or appropriate to cause the appropriate filing(s) to timely occur.

17. For the purposes of Section 468B of the Internal Revenue Code of 1986, as amended, and Treas. Reg. § 1.468B promulgated thereunder, the "administrator" shall be the Escrow Agent or its successors, who shall timely and properly file, or cause to be filed, all federal, state, or local tax returns and information returns (together, "Tax Returns") necessary or advisable with respect to the earnings on the funds deposited in the Escrow Account (including without limitation the returns described in Treas. Reg. § 1.46B-2(k)). Such Tax Returns (as well as the election described above) shall be consistent with this paragraph and in all events shall reflect that

all Taxes (including any estimated taxes, earnings, or penalties) on the income earned on the funds deposited into the Escrow Account shall be paid out of such funds as provided in paragraph 18.

18. All Taxes and Tax Expenses shall be paid out of the Settlement Fund, and in all events the Defendant Releasees shall have no liability or responsibility whatsoever for the payment of Taxes or Tax Expenses, which shall be timely paid by the Escrow Agent pursuant to the disbursement instructions to be set forth in the Escrow Agreement, and without further order of the Court, and Lead Counsel shall be authorized (notwithstanding anything herein to the contrary) to withhold from distribution to Authorized Claimants any funds necessary to pay such amounts, including the establishment of adequate reserves for any Taxes and Tax Expenses (as well as any amounts that may be required to be withheld under Treas. Reg. §1.468B-2(l)(2)). The Parties hereto agree to cooperate with the Escrow Agent, each other, and their tax attorneys and accountants to the extent reasonably necessary to carry out the provisions of ¶¶ 16-18 of this Stipulation.

19. The Settlement is not a claims-made settlement. Upon the occurrence of the Effective Date, no Defendant, other Defendant Releasee, or any other person or entity who or that paid any portion of the Settlement Amount shall have any right to the return of the Settlement Fund or any portion thereof for any reason whatsoever, including without limitation, the number of Claim Forms submitted, the collective amount of Recognized Claims (as defined in the Plan of Allocation contained in the Notice) of Authorized Claimants, the percentage of recovery of losses, or the amounts to be paid to Authorized Claimants from the Net Settlement Fund.

20. Prior to or following the Effective Date of the Settlement, but only after the Court grants preliminary approval of the Settlement, Lead Counsel may pay from the Settlement Fund, without further approval from Defendants or further order of the Court, Notice and Administration

Costs actually incurred and paid or payable up to $185,000. If the Settlement is terminated pursuant to the terms of this Stipulation, the Notice and Administration Costs paid or incurred, including any related fees, shall not be returned or repaid to Defendants, any of the other Defendant Releasees, or any other person or entity who or that paid any portion of the Settlement Amount.

**ATTORNEYS' FEES AND LITIGATION EXPENSES**

21. Lead Counsel will apply to the Court for an award of attorneys' fees to Plaintiff's Counsel to be paid from (and out of) the Settlement Fund. Lead Counsel also will apply to the Court for reimbursement of Plaintiff's Counsel's Litigation Expenses, which may include a request for reimbursement of Lead Plaintiff's costs and expenses directly related to his representation of the Settlement Class, to be paid from (and out of) the Settlement Fund. Lead Counsel will also move for a service award to Lead Plaintiff, not to exceed $10,000. Lead Counsel's application for an award of attorneys' fees and/or Litigation Expenses is not the subject of any agreement between Defendants and Lead Plaintiff other than what is set forth in this Stipulation. Defendants shall take no position with respect to any fee and expense application.

22. Any attorneys' fees and Litigation Expenses that are awarded by the Court shall be paid to Lead Counsel immediately upon award, notwithstanding the existence of any timely filed objections thereto, or potential for appeal therefrom, or collateral attack on the fee and expense application, the Settlement, or any part thereof, subject to Lead Counsel's obligation to make appropriate refunds or repayments to the Settlement Fund, plus accrued interest at the same net rate as is earned by the Settlement Fund, if the Settlement is terminated pursuant to the terms of this Stipulation or if, as a result of any appeal or further proceedings on remand, or successful collateral attack, the award of attorneys' fees and/or Litigation Expenses is reduced or reversed and such order reducing or reversing the award has become Final. Lead Counsel shall make the appropriate refund or repayment in full no later than thirty (30) calendar days after: (a) receiving

from Defendants' Counsel notice of the termination of the Settlement; or (b) any order reducing or reversing the award of attorneys' fees and/or Litigation Expenses has become Final. Any refunds required pursuant to this paragraph shall be the joint and several obligation of Plaintiff's Counsel that received fees or expenses to make appropriate refunds or repayments to the Settlement Fund. Each Plaintiff's Counsel firm receiving fees and expenses, as a condition of receiving such fees and expenses, on behalf of itself and each partner and/or shareholder of it, agrees that such person and its partners, shareholders, and/or members are subject to the jurisdiction of the Court for the purpose of enforcing the provisions of this paragraph.

23. The procedure for the allowance or disallowance of, and the amount of, any attorneys' fees and/or Litigation Expenses are not necessary terms of this Stipulation, are not conditions of the Settlement embodied herein, and shall be considered separately from the Court's consideration of the fairness, reasonableness, and adequacy of the Settlement. Neither Lead Plaintiff nor Lead Counsel may cancel or terminate the Settlement based on this Court's or any appellate court's ruling with respect to attorneys' fees and/or Litigation Expenses, and any appeal from any order awarding attorneys' fees and/or Litigation Expenses or any reversal or modification of any such order shall not affect or delay the finality of the Judgment.

24. Lead Counsel shall have sole discretion to allocate among Plaintiff's Counsel any awarded attorneys' fees and Litigation Expenses. The Defendant Releasees shall have no responsibility for or liability whatsoever with respect to the allocation or award of attorneys' fees or Litigation Expenses.

25. The attorneys' fees and Litigation Expenses that are awarded to Lead Counsel pursuant to this Stipulation shall be payable solely from the Settlement Fund. With the sole exception of Latch's obligation to cause the Settlement Amount to be paid into the Escrow Account

pursuant to ¶ 11 above, Defendant Releasees shall have no responsibility for, and no liability whatsoever with respect to, any payment of attorneys' fees and/or Litigation Expenses to Plaintiff's Counsel pursuant to this Stipulation, or for any other attorneys' fees and/or Litigation Expenses incurred by or on behalf of any other Settlement Class Member in connection with this Action or the Settlement.

## NOTICE AND SETTLEMENT ADMINISTRATION

26. As part of the Preliminary Approval Order, Lead Plaintiff shall seek appointment of a Claims Administrator. The Claims Administrator shall administer the Settlement, including but not limited to the process of receiving, reviewing, and approving or denying Claims, under Lead Counsel's supervision and subject to the jurisdiction of the Court. Other than Latch's obligation to provide or instruct its transfer agent to provide Lead Counsel or the Claims Administrator with Latch's shareholder lists as provided in ¶ 27 below, none of Defendants, nor any of the other Defendant Releasees, shall have any involvement in or any responsibility, authority, or liability whatsoever for the selection of the Claims Administrator, the Plan of Allocation, the administration of the Settlement, the Claims process, or disbursement of the Net Settlement Fund, and shall have no liability whatsoever to any person or entity, including, but not limited to, Lead Plaintiff, any other Settlement Class Members, or Plaintiff's Counsel in connection with the foregoing. Defendants' Counsel shall cooperate in the administration of the Settlement to the extent reasonably necessary to effectuate its terms.

27. In accordance with the terms of the Preliminary Approval Order to be entered by the Court, Lead Counsel shall cause the Claims Administrator to mail the Postcard Notice to those members of the Settlement Class as may be identified through reasonable effort. Lead Counsel shall also cause the Claims Administrator to post the Notice and Claim Form on the Settlement Website as well as cause the Claims Administrator to have the Summary Notice published in

accordance with the terms of the Preliminary Approval Order to be entered by the Court. For the purposes of identifying and providing notice to the Settlement Class, within ten (10) calendar days after the Court's entry of the Preliminary Approval Order, Latch shall make reasonable, good faith efforts to provide or instruct its transfer agent to provide to Lead Counsel or the Claims Administrator, in electronic format, such as Excel, information of potential Settlement Class Members (consisting of names and addresses, as well as e-mail addresses if available), to the extent such information is available, and shall provide Lead Counsel with information sufficient for Lead Counsel to effect payment of any fees or expenses, if any, of the transfer agent that were necessary to obtain and provide such information. It shall solely be Lead Counsel's responsibility to pay or cause to be paid the transfer agent's fees and expenses, if any, necessary to obtain and provide the shareholder lists contemplated by this ¶ 27, provided, however, that such fees and expenses may be paid out of the Settlement Fund as Notice and Administration Costs pursuant to ¶ 17. The Parties acknowledge that any information provided to Lead Counsel or the Claims Administrator by Latch or its transfer agent pursuant to this Paragraph shall be treated as confidential and will be used solely to deliver the Notice, Postcard Notice, and Summary Notice, and/or implement the Settlement, including the Plan of Allocation.

28. It shall be solely Lead Counsel's responsibility to disseminate, or cause dissemination of, the Postcard Notice, Notice, and Summary Notice to the Settlement Class in accordance with this Stipulation and as ordered by the Court. Settlement Class Members shall have no recourse as to the Defendants or any of the other Defendant Releasees or Defendants' Counsel with respect to any claims they may have arising from any failure of the notice process.

29. The Claims Administrator shall receive Claims and determine first, whether the Claim is a valid Claim, in whole or in part, and second, each Authorized Claimant's *pro rata* share

of the Net Settlement Fund as calculated pursuant to the proposed Plan of Allocation set forth in the Notice attached hereto as Exhibit 2 (or such other plan of allocation as the Court approves).

30. The Plan of Allocation proposed in the Notice is not a necessary term of the Settlement or of this Stipulation, and it is not a condition of the Settlement or of this Stipulation that any particular plan of allocation be approved by the Court. Lead Plaintiff and Lead Counsel may not cancel or terminate the Settlement (or this Stipulation) based on this Court's or any appellate court's ruling with respect to the Plan of Allocation or any other plan of allocation approved in this Action. Defendants shall not object in any way to the Plan of Allocation or any other plan of allocation in this Action. No Defendant, nor any other Defendant Releasees, shall have any involvement with or liability, obligation, or responsibility whatsoever for the application of the Court-approved Plan of Allocation.

31. Any Settlement Class Member who does not submit a valid Claim Form will not be entitled to receive any distribution from the Net Settlement Fund, except as otherwise ordered by the Court or allowed by Lead Counsel in their discretion, but will otherwise be bound by all of the terms of this Stipulation and Settlement, including the terms of the Judgment or the Alternative Judgment, if applicable, to be entered in the Action and the Releases provided for herein and therein, and will be permanently barred and enjoined from bringing any action, claim, or other proceeding of any kind against the Defendant Releasees with respect to the Released Plaintiff Claims in the event that the Effective Date occurs with respect to the Settlement.

32. Lead Counsel shall be responsible for supervising the administration of the Settlement and the disbursement of the Net Settlement Fund by the Claims Administrator subject to Court approval. No Defendant, or any other Defendant Releasee, shall have any responsibility for or involvement in the determination or administration of any Claim, nor shall any Defendant

Releasee have any responsibility for, interest in, or liability for any decision to accept or reject a Claim. Lead Counsel shall have the right, but not the obligation, to waive what it deems to be formal or technical defects in any Claims submitted in the interests of achieving substantial justice.

33. For purposes of determining the extent, if any, to which a Claimant shall be entitled to be treated as an Authorized Claimant, the following conditions shall apply:

(a) Each Claimant shall be required to submit a Claim in paper form, substantially in the form attached hereto as Exhibit 5, or in electronic form, in accordance with the instructions for the submission of such Claims, and supported by such documents as are designated therein, including proof of the Claimant's claimed loss, or such other documents or proof as the Claims Administrator or Lead Counsel, in their discretion, may deem acceptable;

(b) All Claims must be submitted by the date set by the Court in the Preliminary Approval Order and specified in the Postcard Notice, Notice, Summary Notice, and Claim Form, unless such deadline is extended by Lead Counsel in their discretion or by order of the Court. Any Settlement Class Member who fails to submit a Claim by such date shall be forever barred from receiving any distribution from the Net Settlement Fund or payment pursuant to this Stipulation (unless by order of the Court or discretion of Lead Counsel, such late-filed Settlement Class Member's Claim Form is accepted), but shall in all other respects be bound by all of the terms of this Stipulation and the Settlement, including the terms of the Judgment or Alternative Judgment, if applicable, and the Releases provided for herein and therein, and will be permanently barred and enjoined from bringing any action, claim, or other proceeding of any kind against any of Defendant Releasees with respect to any Released Plaintiff Claim. A Claim Form shall be deemed to be submitted when postmarked, if received with a postmark indicated on the envelope and if mailed by first-class mail or overnight U.S. mail and addressed in accordance with the instructions

thereon. In all other cases, the Claim Form shall be deemed to have been submitted on the date when actually received by the Claims Administrator;

(c) Each Claim shall be submitted to and reviewed by the Claims Administrator, who shall determine in accordance with this Stipulation and the Plan of Allocation the extent, if any, to which each Claim shall be allowed, subject to review by the Court pursuant to subparagraph (e) below as necessary;

(d) Claims that do not meet the submission requirements may be rejected. Prior to rejecting a Claim in whole or in part, the Claims Administrator shall communicate with the Claimant in writing to give the Claimant the chance to remedy any curable deficiencies in the Claim Form submitted. The Claims Administrator shall notify, in a timely fashion and in writing, all Claimants whose Claim the Claims Administrator proposes to reject in whole or in part for curable deficiencies, setting forth the reasons therefor, and shall indicate in such notice that the Claimant whose Claim is to be rejected has the right to review by the Court if the Claimant so desires and complies with the requirements of subparagraph (e) below; and

(e) If any Claimant whose Claim has been rejected in whole or in part for curable deficiency desires to contest such rejection, the Claimant must, within twenty (20) calendar days after the date of mailing of the notice required in subparagraph (d) above, or a lesser period of time if the Claim was untimely, serve upon the Claims Administrator a notice and statement of reasons indicating the Claimant's grounds for contesting the rejection, along with any supporting documentation, and requesting a review thereof by the Court. If a dispute concerning a Claim cannot be otherwise resolved, Lead Counsel shall thereafter present the request for review to the Court.

34. Each Claimant shall be deemed to have submitted to the jurisdiction of the Court with respect to the Claimant's Claim, and the Claim will be subject to investigation and discovery under the Federal Rules of Civil Procedure, provided, however, that such investigation and discovery shall be limited to that Claimant's status as a Settlement Class Member and the validity and amount of the Claimant's Claim. No discovery shall be allowed on the merits of this Action or of the Settlement in connection with the processing of Claims, nor against any Defendants or any other Defendant Releasee.

35. Lead Counsel will apply to the Court, on notice to Defendants' Counsel, for a Class Distribution Order: (a) approving the Claims Administrator's administrative determinations concerning the acceptance and rejection of the Claims submitted; (b) approving payment of any outstanding administration fees and expenses associated with the administration of the Settlement from the Escrow Account; and (c) if the Effective Date has occurred, directing payment of the Net Settlement Fund to Authorized Claimants from the Escrow Account.

36. Payment pursuant to the Class Distribution Order shall be final and conclusive against all Settlement Class Members. All Settlement Class Members whose Claims are not approved by the Court for payment shall be barred from participating in distributions from the Net Settlement Fund but otherwise shall be bound by all of the terms of this Stipulation and the Settlement, including the terms of the Judgment or Alternative Judgment, if applicable, to be entered in this Action and the Releases provided for herein and therein, and will be permanently barred and enjoined from bringing any action against any and all Defendant Releasees with respect to any and all of the Released Plaintiff Claims.

37. No person or entity shall have any claim against Lead Plaintiff, Plaintiff's Counsel, the Claims Administrator or any other agent designated by Lead Counsel, or the Defendant

Releasees and/or their respective counsel, arising from distributions made substantially in accordance with the Stipulation, the Plan of Allocation approved by the Court, or any order of the Court. Lead Plaintiff, Lead Plaintiff's damages consultant, Defendants, all other Releasees, and their respective counsel shall have no liability whatsoever for the investment or distribution of the Settlement Fund or the Net Settlement Fund, the Plan of Allocation, or the determination, administration, calculation, or payment of any Claim or nonperformance of the Claims Administrator, the payment or withholding of Taxes (including interest and penalties), the payment of Tax Expenses owed by the Settlement Fund, or any losses incurred in connection therewith.

38. To the extent any monies remain in the Net Settlement Fund by reason of uncashed checks, or otherwise, nine (9) months after the initial distribution, if Lead Counsel, in consultation with the Claims Administrator, determines that it is cost-effective to do so, the Claims Administrator will conduct a re-distribution of the funds remaining after payment of any unpaid fees and expenses incurred in administering the Settlement, including for such re-distribution, to Authorized Claimants who have cashed their initial distributions and who would receive at least $10.00 from such re-distribution. Additional re-distributions may occur thereafter if Lead Counsel, in consultation with the Claims Administrator, determines that additional re-distributions, after deduction of any additional fees and expenses incurred in administering the Settlement, including for such re-distributions, would be cost-effective. At such time as it is determined that the redistribution of funds remaining in the Net Settlement Fund is no longer cost-effective, the remaining balance shall be contributed to non-sectarian, not-for-profit organization(s), to be recommended by Lead Plaintiff and Lead Counsel and approved by the Court.

39. All proceedings with respect to the administration, processing, and determination of Claims and the determination of all controversies relating thereto, including disputed questions of law and fact with respect to the validity of Claims, shall be subject to the jurisdiction of the Court. All Settlement Class Members, other Claimants, and the Parties to this Settlement expressly waive trial by jury (to the extent any such right may exist) and any right of appeal or review with respect to such determinations.

## TERMS OF THE JUDGMENT AND RELATED PROCEEDINGS

40. If the Settlement contemplated by this Stipulation is approved by the Court, Lead Counsel and Defendants' Counsel shall request that the Court enter a Judgment, substantially in the form attached hereto as Exhibit 6.

## CONDITIONS OF SETTLEMENT AND EFFECT OF DISAPPROVAL, CANCELLATION, OR TERMINATION

41. The Effective Date of the Settlement shall be deemed to occur on the occurrence or waiver of all of the following events:

(a) the Court has entered the Preliminary Approval Order, substantially in the form set forth in Exhibit 1 attached hereto, as required by ¶ 2 above;

(b) the Settlement Amount has been deposited into the Escrow Account in accordance with the provisions of ¶ 11 above;

(c) Defendants have not exercised their option to terminate the Settlement pursuant to the provisions of this Stipulation;

(d) Lead Plaintiff has not exercised his option to terminate the Settlement pursuant to the provisions of this Stipulation; and

(e) (i) the Court has approved the Settlement as described herein, following notice to the Settlement Class and a hearing, as prescribed by Rule 23 of the Federal Rules of Civil

Procedure, and entered the Judgment and the Judgment has become Final, or (ii) the Court has entered an Alternative Judgment, none of the Parties seeks to terminate the Settlement, and the Alternative Judgment has become Final.

42. Upon the occurrence of all of the events referenced in ¶ 41 above, any and all remaining interest or right of Defendants or any other Defendant Releasee in or to the Settlement Fund, if any, shall be absolutely and forever extinguished, and the Releases herein shall be effective.

43. If: (i) Defendants exercise their right to terminate the Settlement as provided in this Stipulation; (ii) Lead Plaintiff exercises his right to terminate the Settlement as provided in this Stipulation; (iii) the Court disapproves the Settlement; or (iv) the Effective Date as to the Settlement otherwise fails to occur, then:

(a) the Settlement and the relevant portions of this Stipulation shall be canceled and terminated;

(b) Lead Plaintiff and Defendants shall revert to their respective positions in the Action as of the date immediately prior to December 14, 2024;

(c) the terms and provisions of this Stipulation, with the exception of this ¶ 43 and ¶¶ 20, 22, 45-47, and 67, shall have no further force and effect with respect to the Parties and shall not be used in the Action or in any other proceeding for any purpose, and any Judgment, or Alternative Judgment, if applicable, or order entered by the Court in accordance with the terms of this Stipulation shall be treated as vacated, *nunc pro tunc*;

(d) Defendants' Counsel and Lead Counsel shall, within ten (10) business days of the occurrence of any of the conditions in this ¶ 43, send joint written notification of termination to the Escrow Agent; and

(e) Within ten (10) business days after joint written notification of termination is sent by Defendants' Counsel and Lead Counsel to the Escrow Agent, the Settlement Fund (including accrued interest thereon and any funds received by Lead Counsel consistent with ¶ 22 above), less any Notice and Administration Costs actually incurred, paid, or payable and less any Taxes and Tax Expenses paid, due, or owing, shall be returned by the Escrow Agent to the parties who contributed to the payment of the Settlement Amount, as instructed by Defendants' Counsel. In the event that the funds received by Lead Counsel consistent with ¶ 22 above have not been refunded to the Settlement Fund within the ten (10) business days specified in this paragraph, those funds shall be refunded by the Escrow Agent to Defendants (or such other persons or entities as Defendants' Counsel may direct) immediately upon their deposit into the Escrow Account consistent with ¶ 22 above. At the request of Defendants' Counsel, the Escrow Agent or its designees shall apply for any tax refund owed on the amounts in the Escrow Account and pay the proceeds, after deduction of any fees or expenses incurred in connection with such application(s), of such refund to the person(s) that made the deposits, or as otherwise directed by Defendants' Counsel.

44. It is further stipulated and agreed that Lead Plaintiff, on the one hand, and Defendants, on the other hand, shall each have the right to terminate the Settlement and this Stipulation, by providing written notice of their election to do so ("Termination Notice") to the other Parties to this Stipulation within thirty (30) calendar days of: (a) the entry of an Alternative Judgment that differs in any material respect from the Judgment; (b) the Court's final refusal to enter the Preliminary Approval Order in any material respect; (c) the Court's final refusal to approve the Settlement or any material part thereof; (d) the Court's final refusal to enter the Judgment in any material respect as to the Settlement; (e) the Court's final refusal to dismiss the

Action with prejudice; (f) the date upon which the Judgment is modified or reversed in any material respect by the United States Court of Appeals for the Third Circuit or the United States Supreme Court; or (g) the date upon which an Alternative Judgment is modified or reversed in any material respect by the United States Court of Appeals for the Third Circuit or the United States Supreme Court. The provisions of ¶ 42 above shall apply to any such termination. However, any decision or proceeding, whether in this Court or any appellate court, with respect to an application for attorneys' fees or reimbursement of Litigation Expenses, or with respect to any plan of allocation, shall not be considered material to the Settlement, shall not affect the finality of any Judgment or Alternative Judgment, if applicable, and shall not be grounds for termination of the Settlement.

45. In addition to the foregoing, Defendants, in accordance with the terms set forth in the Supplemental Agreement (defined below), shall also have the right to withdraw from the Settlement in the event the Termination Threshold (defined below) has been reached. Simultaneously herewith, Defendants' Counsel and Lead Counsel are executing a confidential Supplemental Agreement Regarding Requests for Exclusion ("Supplemental Agreement"). The Supplemental Agreement sets forth certain conditions under which Defendants shall have the option to terminate the Settlement and render this Stipulation null and void in the event that Persons who otherwise would be Settlement Class Members have timely and validly requested exclusion from the Settlement Class, and such Persons in the aggregate meet or exceed certain agreed-upon criteria (the "Termination Threshold"). The Parties agree to maintain the confidentiality of the Supplemental Agreement, which shall not be filed with the Court unless a dispute arises as to its terms, or as otherwise ordered by the Court, nor shall the Supplemental Agreement otherwise be disclosed unless ordered by the Court. If submission of the Supplemental Agreement is required

for resolution of a dispute or is otherwise ordered by the Court, the Parties will undertake to have the Termination Threshold submitted to the Court *in camera* or under seal.

46. If an option to withdraw from and terminate this Stipulation and Settlement arises under any of ¶¶ 44-45 above: (i) neither Defendants nor Lead Plaintiff (as the case may be) will be required for any reason or under any circumstance to exercise that option; and (ii) any exercise of that option shall be made in good faith, but in the sole and unfettered discretion of Defendants or Lead Plaintiff, as applicable.

**NO ADMISSION OF WRONGDOING**

47. Neither this Stipulation (whether or not consummated), including the exhibits hereto and the Plan of Allocation contained therein (or any other plan of allocation that may be approved by the Court), the Supplemental Agreement, the negotiations leading to the execution of this Stipulation or the Supplemental Agreement, nor any proceedings taken pursuant to or in connection with this Stipulation and/or approval of the Settlement (including any arguments proffered in connection therewith): (a) (i) shall be offered against any of the Defendant Releasees as evidence of, construed as, or deemed to be evidence of, any presumption, concession, or admission by any of the Defendant Releasees with respect to (1) the truth of any fact alleged by Lead Plaintiff, (2) the validity of any claim that was or could have been asserted, (3) the deficiency of any defense that has been or could have been asserted in this Action or in any other litigation, (4) any liability, negligence, fault, or other wrongdoing of any kind of any of the Defendant Releasees, or (ii) shall in any way be referred to for any other reason as against any of the Defendant Releasees, in any civil, criminal, or administrative action or proceeding, other than such proceedings as may be necessary to effectuate the provisions of this Stipulation; (b) (i) shall be offered against any of the Plaintiff Releasees as evidence of, construed as, or deemed to be evidence of, any presumption, concession or admission by any of the Plaintiff Releasees (1) that

any of their claims is without merit, (2) that any of the Defendant Releasees had meritorious defenses, (3) that damages recoverable under the Complaint would not have exceeded the Settlement Amount, or (4) with respect to any liability, negligence, fault or wrongdoing of any kind, or (ii) shall in any way be referred to for any other reason as against any of the Plaintiff Releasees, in any civil, criminal, or administrative action or proceeding, other than such proceedings as may be necessary to effectuate the provisions of this Stipulation; or (c) shall be construed against any of the Releasees as an admission, concession, or presumption that the consideration to be given hereunder represents the amount that could be or would have been recovered after trial; *provided*, *however*, that if this Stipulation is approved by the Court, the Parties and the Releasees and their respective counsel may refer to it to effectuate the protections from liability granted hereunder or otherwise to enforce the terms of the Settlement.

## MISCELLANEOUS PROVISIONS

48. All of the exhibits attached hereto are hereby incorporated by reference as though fully set forth herein. Notwithstanding the foregoing, in the event that there exists a conflict or inconsistency between the terms of this Stipulation and the terms of any exhibit attached hereto, the terms of the Stipulation shall prevail.

49. Pursuant to the Class Action Fairness Act ("CAFA"), no later than ten (10) calendar days after the Stipulation is filed with the Court, Defendants, at their own cost, shall serve proper notice of the proposed Settlement upon those who are entitled to notice pursuant to CAFA.

50. In the event of the entry of a final order of a court of competent jurisdiction determining the transfer of money to the Settlement Fund or any portion thereof by or on behalf of Defendants to be a preference, voidable transfer, fraudulent transfer, or similar transaction and any portion thereof is required to be returned, and such amount is not promptly deposited into the Settlement Fund by others, then, at the election of Lead Plaintiff, the Parties shall jointly move the

Court to vacate and set aside the Releases given and the Judgment or Alternative Judgment, if applicable, entered in favor of Defendants and the other Defendant Releasees pursuant to this Stipulation, in which event the Releases and Judgment, or Alternative Judgment, if applicable, shall be null and void, and the Parties shall be restored to their respective positions in the litigation as provided in ¶ 43(b) above, Lead Counsel shall promptly return any attorneys' fees and Litigation Expenses received pursuant to ¶ 22, above, plus accrued interest at the same net rate as is earned by the Settlement Fund, and any cash amounts in the Settlement Fund (less any Taxes and Tax Expenses paid, due or owing with respect to the Settlement Fund and less any Notice and Administration Costs actually incurred, paid, or payable) shall be returned as provided in ¶¶ 43(d)-(e) above.

51. The Parties intend this Stipulation and the Settlement to be a final and complete resolution of all disputes asserted or that could be asserted by Lead Plaintiff and any Settlement Class Member against the Defendant Releasees with respect to the Released Plaintiff Claims. Accordingly, Lead Plaintiff and his counsel and Defendants and their counsel agree not to assert in any forum that this Action was brought by Lead Plaintiff or defended by Defendants in bad faith or without a reasonable basis. No party shall assert any claims of any violation of Rule 11 of the Federal Rules of Civil Procedure, or of 28 U.S.C. § 1927, or otherwise make any accusation of wrongful or actionable conduct by any other Party, relating to the institution, prosecution, defense, or settlement of this Action. The Parties agree that the amounts paid and the other terms of the Settlement were negotiated at arm's-length and in good faith by the Parties through a mediation process supervised and conducted by the Mediator and reflect that the Settlement was reached voluntarily after extensive negotiations and consultation with experienced legal counsel, who were

fully competent to assess the strengths and weaknesses of their respective clients' claims or defenses.

52. The terms of the Settlement, as reflected in this Stipulation, may not be modified or amended, nor may any of its provisions be waived, except by a writing signed on behalf of both Lead Plaintiff and Defendants (or their successors-in-interest).

53. The headings herein are used for the purpose of convenience only and are not meant to have legal effect.

54. Pending approval of the Court of this Stipulation and its exhibits, all proceedings in this Action shall be stayed and all members of the Settlement Class shall be barred and enjoined from prosecuting any of the Released Plaintiff Claims against any of the Defendant Releasees.

55. The administration and consummation of the Settlement as embodied in this Stipulation shall be under the authority of the Court, and the Court shall retain jurisdiction for the purpose of entering orders providing for awards of attorneys' fees and Litigation Expenses to Lead Counsel and enforcing the terms of this Stipulation, including the Plan of Allocation (or such other plan of allocation as may be approved by the Court) and the distribution of the Net Settlement Fund to Settlement Class Members.

56. The waiver by one Party of any breach of this Stipulation by any other Party shall not be deemed a waiver of any other prior or subsequent breach of this Stipulation.

57. This Stipulation, its exhibits, and the Supplemental Agreement constitute the entire agreement among Lead Plaintiff and Defendants concerning the Settlement. All Parties acknowledge that no other agreements, representations, warranties, or inducements have been made by any Party concerning this Stipulation, its exhibits, or the Supplemental Agreement other than those contained and memorialized in such documents.

58. Without further order of the Court, the Parties may agree to reasonable extensions of time to carry out any of the provisions of this Stipulation.

59. This Stipulation may be executed in one or more counterparts, including by signature transmitted via facsimile, or by a .pdf/.tif image of the signature transmitted via email. All executed counterparts and each of them shall be deemed to be one and the same instrument. This Stipulation shall be binding upon and inure to the benefit of the successors and assigns of the Parties, any and all Releasees and any corporation, partnership, or other entity into or with which any Party or Releasee may merge, consolidate or reorganize.

60. The construction, interpretation, operation, effect, and validity of this Stipulation and all documents necessary to effectuate the Settlement shall be governed by the internal laws of Delaware without regard to conflicts of laws, except to the extent that federal law requires that federal law govern.

61. Any action arising under or to enforce this Stipulation, or any portion thereof, shall be commenced and maintained only in the Court.

62. This Stipulation shall not be construed more strictly against one Party than another merely by virtue of the fact that it, or any part of it, may have been prepared by counsel for one of the Parties, it being recognized that it is the result of arm's-length negotiations between the Parties and all Parties have contributed substantially and materially to the preparation of this Stipulation.

63. All counsel and any other person executing this Stipulation and any of the exhibits hereto, or any related Settlement documents, warrant and represent that they have the full authority to do so and that they have the authority to take appropriate action required or permitted to be taken pursuant to the Stipulation to effectuate its terms.

64. Lead Counsel and Defendants' Counsel agree to cooperate fully with one another in seeking Court approval of the Preliminary Approval Order and the Settlement, as embodied in this Stipulation, and to use best efforts to promptly agree upon and execute all such other documentation as may be reasonably required to obtain final approval by the Court of the Settlement.

65. If any Party is required to give notice to another Party under this Stipulation, such notice shall be in writing and shall be deemed to have been duly given upon receipt of hand delivery or email transmission, with confirmation of receipt. Notice shall be provided as follows:

| | |
|---|---|
| If to Lead Plaintiff or<br>Lead Counsel: | Fishman Haygood LLP<br>Attn: Kaja S. Elmer<br>201 Saint Charles Ave, 46th Floor<br>New Orleans, LA 70170<br>Telephone: (504) 586-5252<br>Email: kelmer@fishmanhaygood.com |
| If to Defendants or<br>Defendants' Counsel: | Latham & Watkins LLP<br>Attn: Kristin N. Murphy<br>650 Town Center Drive, 20th Floor<br>Costa Mesa, CA 92626-1925<br>Telephone: (714) 755-8287<br>Email: kristin.murphy@lw.com |

66. Except as otherwise provided herein, each Party shall bear its own costs.

67. All agreements made and orders entered during the course of this Action relating to the confidentiality of information shall survive this Settlement.

68. Any disputes that arise regarding the finalization of the Settlement shall be referred to the Mediator for binding resolution. If for any reason the Mediator is unavailable or has a conflict, a substitute neutral will be agreed upon by the Parties, or in the absence of agreement, appointed by the Mediator or his designee. Any fees payable to the Mediator or his substitute in connection with such dispute resolution or for any follow-up issues will be split equally between the Parties.

69. No opinion or advice concerning the tax consequences of the proposed Settlement to individual Settlement Class Members is being given or will be given by the Parties or their counsel; nor is any representation or warranty in this regard made by virtue of this Stipulation. Each Settlement Class Member's tax obligations, and the determination thereof, are the sole responsibility of the Settlement Class Member, and it is understood that the tax consequences may vary depending on the particular circumstances of each individual Settlement Class Member.

70. Each of the Parties and their counsel agree that they will not directly or indirectly, individually or in concert with others, engage in any conduct or make, or cause to be made, any statement, observation, or opinion, or communicate any information (whether oral or written) that is calculated to or is likely to have the effect of in any way undermining, defaming, or disparaging the Defendant Releasees or Lead Plaintiff. Nothing in this Paragraph 70 shall restrict Lead Plaintiff's ability to summarize and/or reference the allegations in the Complaint in connection with his submissions to the Court seeking approval of the Settlement.

**IN WITNESS WHEREOF,** the Parties hereto have caused this Stipulation to be executed, by their duly authorized attorneys, as of June 11, 2025.

**FISHMAN HAYGOOD LLP**

*<u>/s/ Kaja S. Elmer</u>*
Brent B. Barriere
Jason W. Burge
Kaja S. Elmer
201 St. Charles Avenue, 46th Floor
New Orleans, Louisiana 70170-4600
Telephone: (504) 586-5252
Facsimile: (504) 586-5250
bbarriere@fishmanhaygood.com
jburge@fishmanhaygood.com
kelmer@fishmanhaygood.com

**DELEEUW LAW LLC**
P. Bradford deLeeuw (DE Bar ID #3569)
1301 Walnut Green Road
Wilmington, Delaware 19807
Telephone: (302) 274-2180
Facsimile: (302) 351-6905
brad@deleeuwlaw.com

**BRAGAR EAGEL & SQUIRE, P.C.**
Lawrence P. Eagel
810 Seventh Avenue, Suite 620
New York, NY 10019
Telephone: (212) 308-5858
eagel@bespc.com

*Counsel for Lead Plaintiff Scott Schwartz and the Proposed Settlement Class*

**LATHAM & WATKINS LLP**

*/s/ Kristin N. Murphy*
Kristin N. Murphy
650 Town Center Drive, 20th Floor
Costa Mesa, CA 92626
Tel: (714) 540-1235
kristin.murphy@lw.com

Colleen C. Smith
12670 High Bluff Drive
San Diego, California 92130
Tel: (858) 523-5400
colleen.smith@lw.com

**RICHARDS LAYTON & FINGER, P.A.**
Robert L. Burns
Kyle H. Lachmund
920 North King Street
Wilmington, DE 19801
Tel: (302) 651-7618
Fax: (302) 657-7701
burns@rlf.com
lachmund@rlf.com

*Counsel for Defendants*